IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:08-CR-262-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| FERNANDO MIGUEL NUNEZ, | ) | |
| | ) | |
| Defendant. | ) | |

On December 17, 2021, Fernando Miguel Nunez ("Nunez" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) and for appointment of counsel [D.E. 155]. On December 21, 2021, the court appointed Nunez an attorney. See [D.E. 156]. On February 24, 2022, Nunez's attorney moved to withdraw. See [D.E. 159]. On February 28, 2022, the court granted the motion to withdraw. See [D.E. 160]. On March 16, 2022, the court ordered the government to respond to Nunez's motion for compassionate release. See [D.E. 161]. On April 6, 2022, the government responded in opposition. See [D.E. 162]. On April 22, 2022, Nunez replied. See [D.E. 163]. On July 13, 2022, Nunez moved to supplement his compassionate release motion. See [D.E. 170]. As explained below, the court grants Nunez's motion to supplement and denies Nunez's motion for compassionate release.

I.

On October 6, 2008, pursuant to a written plea agreement, Nunez pleaded guilty to possession with the intent to distribute in excess of 100 kilograms of marijuana. See [D.E. 15, 17,

1

41]. On May 19, 2009, the court held Nunez's sentencing hearing. See [D.E. 29, 32, 40]. At the hearing, the court adopted the facts set forth in the Presentence Investigation Report ("PSR"), resolved Nunez's objections, increased Nunez's advisory guideline range due to obstruction of justice, and declined to give Nunez a reduction for acceptance of responsibility. See Fed. R. Crim. P. 32(i)(3)(A)–(B); Sentencing Tr. [D.E. 40] 3–66. The court calculated Nunez's total offense level to be 36, his criminal history category to be V, and his advisory guideline range to be 292 to 365 months' imprisonment. See Sentencing Tr. at 3–66. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Nunez to 365 months' imprisonment. See id. at 67–87; [D.E. 29, 32]. Nunez appealed. [D.E. 28]. On September 20, 2010, the United States Court of Appeals for the Fourth Circuit affirmed. See United States v. Nunez, 396 F. App'x 45, 45–46 (4th Cir. 2010) (per curiam) (unpublished); [D.E. 44].

On November 17, 2014, Nunez moved pro se for a sentence reduction. See [D.E. 77]. On May 8, 2015, Nunez moved pro se to supplement his motion for a sentence reduction. See [D.E. 80]. On January 28, 2016, Nunez moved through counsel for a sentence reduction under 18 U.S.C. § 3582(c)(2), U.S.S.G. § 1B1.10 and Amendment 782. See [D.E. 86]. On February 10, 2016, the government responded. See [D.E. 88]. On July 31, 2018, the court denied Nunez's motions for reduction of sentence. See [D.E. 91]. Nunez appealed. See [D.E. 93]. On November 20, 2018, the Fourth Circuit affirmed. See United States v. Nunez, 742 F. App'x 769, 769–70 (4th Cir. 2018) (per curiam) (unpublished); [D.E. 99].

On December 3, 2018, Nunez moved to compel specific performance of his plea agreement. See [D.E. 101]. On January 11, 2019, the court denied Nunez's motion to compel. See [D.E. 107]. Nunez appealed. See [D.E. 108]. On February 14, 2019, Nunez also filed a motion for

2

reconsideration regarding his motion to compel. See [D.E. 112]. On February 19, 2019, the court denied Nunez's motion for reconsideration. See [D.E. 115]. Nunez appealed the order denying his motion for reconsideration. See [D.E. 119]. On April 23, 2019, the Fourth Circuit affirmed. See United States v. Nunez, 765 F. App'x 37, 37–38 (4th Cir. 2019) (per curiam) (unpublished); [D.E. 123].

On July 21, 2021, Nunez moved for leave to proceed in forma pauperis, to appoint counsel, and for relief under Federal Rule of Civil Procedure 60(b). See [D.E. 140]. On August 18, 2021, the court ordered the government to respond. See [D.E. 141]. On September 29, 2021, the government responded in opposition. See [D.E. 145]. On October 22, 2021, the court denied Nunez's motion for relief under Rule 60(b). See [D.E. 146]. Nunez appealed. See [D.E. 149]. On May 26, 2022, the Fourth Circuit affirmed. See United States v. Nunez, No. 21-7646, 2022 WL 1686398, at *1 (4th Cir. May 26, 2022) (per curiam) (unpublished); [D.E. 164].

On December 17, 2021, Nunez moved pro se for compassionate release. See [D.E. 155]. On March 16, 2022, the court ordered the government to respond. See [D.E. 161]. On April 6, 2022, the government responded in opposition. See [D.E. 162]. On April 22, 2022, Nunez replied. See [D.E. 163]. On July 13, 2022, Nunez moved to supplement his compassionate release motion. See [D.E. 170].

II.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a

3

reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the BOP has determined that the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A); see United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 329–30 (4th Cir. 2021) (per curiam), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020). A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). This requirement is nonjurisdictional, and the government waives a defense based on section 3582(c)(1)(A)'s timing requirements if the government does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021).

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, a defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote

4

respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason for a sentence reduction. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 cmt. n.3; McCoy, 981 F.3d at 286 n.9.

No Sentencing Commission policy statement currently applies to a defendant's compassionate release motion. See Hargrove, 30 F.4th at 194; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–31; McCoy, 981 F.3d at 281–82. U.S.S.G. § 1B1.13 is a policy statement that applies to compassionate release motions filed by the BOP Director. Nonetheless, section 1B1.13 "remains helpful guidance even when motions are filed by defendants." McCoy, 981 F.3d at 282 n.7; see Hargrove, 30 F.4th at 194. Application Note 1 of U.S.S.G. § 1B1.13 lists several extraordinary and compelling circumstances, including (A) a defendant's serious medical condition, (B) a defendant's age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her sentence, (C) certain family circumstances in which a defendant's minor children or incapacitated spouse or registered partner would otherwise have no caregiver, or (D) any other extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1. "[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a" sentence reduction. Id. at § 1B1.13 cmt. n.2.

Nunez seeks compassionate release pursuant to section 3582(c)(1)(A). Nunez sought administrative relief before filing his motion for compassionate relief. See [D.E. 155-2] 2. Thus,

5

Nunez has satisfied the administrative exhaustion requirement, which the government recognizes. See [D.E. 162] 4.

In seeking compassionate release, Nunez cites the COVID-19 pandemic and claims that he suffers from testicular and lung cancer and an unknown skin disease. See [D.E. 155] 2. The "medical condition of the defendant" policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Nunez argues that his cancer and the unknown skin disease put him at an increased risk from COVID-19.

Nunez refused the COVID-19 vaccine. See [D.E. 162-1]. Nunez has not disclosed to the court any religious or medical reason why he cannot receive the COVID-19 vaccine. Although Nunez claims that some member of the prison medical staff advised him to wait to receive the vaccine until after resolving his unknown skin condition, [D.E. 163] 6–7, there is no record of a medical exemption for Nunez. See [D.E. 162-1].

"[A] prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release. The risk is self-incurred." United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021); see United States v. Rhodes, No. 7:16-CR-120-D-12, 2022 WL 2311773, at *3 (E.D.N.C. June 27, 2022) (unpublished) (collecting cases). Moreover, although Nunez refused the COVID-19 vaccine, the wide availability of COVID-19 vaccines for others means that Nunez "largely faces the same risk from COVID-19 as those who are not incarcerated." United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021). Furthermore, the availability of COVID-19 vaccines continues to afford Nunez the

6

ability to reduce his risk should he so choose. See United States v. Thomas, No. 21-1645, 2022 WL 296594, at *2 (3d Cir. Feb. 1, 2022) (unpublished); United States v. Kennedy, No. 21-2675, 2022 WL 43187, at *2 (6th Cir. Jan. 5, 2022) (unpublished); Broadfield, 5 F.4th at 803; Rhodes, 2022 WL 22311772, at *3. Accordingly, reducing Nunez's sentence does not comport with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

Besides the heightened risk of COVID-19 infection due to his medical conditions, Nunez does not otherwise allege that the BOP is not treating and monitoring his medical conditions or that he is unable to provide self-care while incarcerated. See [D.E. 155-2] 17–58 (Nunez's exhibits detailing the extensive care afforded to him to address his medical conditions). And arguments based on generalizations about the spread of COVID-19 in prison have considerably less force given the wide availability of COVID-19 vaccines, the current medical conditions at USP Lompoc where Nunez is incarcerated,[1] and BOP's extensive efforts to control and contain COVID-19. See Bureau of Prisons, BOP's COVID-19 Response, https://www.bop.gov/coronavirus/overview.jsp#bop_covid -19_response (last visited Sept. 1, 2022); see also United States v. Joseph, 2022 WL 3644875, No. 21-10359, at *1 (9th Cir. Aug. 24, 2022) (unpublished) (affirming denial of companionate release from USP Lompoc and noting that appellant failed to disprove the district court's finding that USP Lompoc maintained a "low incidence of infection and high rate of vaccination.").

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic and Nunez's medical conditions constitute extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020)

---

[1] As of August 31, 2022, USP Lompoc has reported one current inmate confirmed test positive and two staff positives. See https://www.bop.gov/coronavirus (last visited Sept. 1, 2022).

7

("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). However, the section 3553(a) factors counsel against reducing Nunez's sentence. See Hargrove, 30 F.4th at 194–95, 198–200; High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); United States v. Covarrubias, 2022 WL 3693447, No. 2:12-516-1, at *1–5 (S.D. Tex. Aug. 25, 2022) (unpublished); United States v. Clark, 2020 WL 1874140, 1:09cr336-1, at *3–8 (M.D.N.C. Apr. 15, 2020) (unpublished).

Nunez is 39 years old and is incarcerated for possession with intent to distribute in excess of 100 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1). See PSR [D.E. 150] ¶¶ 2, 5–9; [D.E. 162] 27. Conservatively, Nunez distributed 3,175.2 kilograms of marijuana. See PSR ¶ 6. Furthermore, Nunez obstructed justice concerning his case. See id. at ¶¶ 7, 38, 42; Sentencing Tr. at 3–66. Nunez admitted to offering tens of thousands of dollars to his cell mate in the Wake County Jail to murder three drug trafficking co-defendants. See PSR at ¶ 7; Sentencing Tr. at 3–66. Nunez indicated to his cell mate that a Mexican drug trafficking cartel would pay tens of thousands of dollars for the murders and told his cell mate that the heads of the three co-defendants should be delivered to Nunez's brother. See PSR ¶ 7; Sentencing Tr. at 3–66. Nunez stated that his brother was the head of the Texas chapter of Los Zetas, "a criminal gang that operates as a hired mercenary army for Mexico's Gulf Cartel[.]" PSR ¶ 7. Unbeknownst to Nunez, the person he solicited to commit the murders told authorities about Nunez's offer. See Sentencing Tr. at 3–66.

As for Nunez's history and characteristics, Nunez has a lengthy and violent criminal history. See PSR ¶¶ 11–14, 43. He has convictions for assault by means likely to produce great bodily injury,

8

terrorist threats, and possession of a firearm by a felon. See id. at ¶¶ 11, 14. The record also does not contain positive steps that Nunez has taken while incarcerated. Cf. Pepper, 562 U.S. at 480–81.

Having considered the entire record, Nunez's arguments, the section 3553(a) factors, the government's persuasive response, Nunez's potential exposure to COVID-19, Nunez's medical conditions, the extensive steps that the BOP has taken to address COVID-19, and the need to punish Nunez for his serious criminal behavior, to incapacitate Nunez, to promote respect for the law, to deter others, and to protect society, the court denies Nunez's motion for compassionate release. See, e.g., Concepcion v. United States, 142 S. Ct. 2389, 2403–04 (2022); Chavez-Meza, 138 S. Ct. at 1966–68; Pepper, 562 U.S. at 480–81; Hargrove, 30 F.4th at 198–200; Kibble, 992 F.3d at 331–32; High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; United States v. Ruffin, 978 F.3d 1000, 1008–09 (6th Cir. 2020); Chambliss, 948 F.3d at 693–94; Martin, 916 F.3d at 398; United States v. Hill, No. 4:13-CR-28, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

III.

In sum, the court GRANTS defendant's motion to supplement [D.E. 170] and DENIES defendant's motion for compassionate release [D.E. 155].

SO ORDERED. This  1  day of September, 2022.

*[signature]*
JAMES C. DEVER III
United States District Judge

Case 5:08-cr-00262-D  Document 173  Filed 09/01/22  Page 9 of 9